UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DONALD WARREN PAUL BILLIOT, JR.**                    **CIVIL ACTION**

**VERSUS**                                             **NO. 20-3084**

**CORONA VIRUS DISEASE, ET AL.**                       **SECTION: "L"(1)**

**REPORT AND RECOMMENDATION**

Plaintiff, Donald Warren Paul Billiot, Jr., a state inmate incarcerated at the Terrebonne Parish Criminal Justice Complex, filed this *pro se* federal civil action pursuant to 42 U.S.C. § 1983.[1] In his complaint, he named the "Corona Virus Disease" and the "Terrebonne Parish Chabert Medical Center on Grand Caillou Road" as the defendants.

Because plaintiff's written complaint was largely incomprehensible, the Court held a Spears hearing in this matter on January 29, 2021. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

At that Spears hearing, plaintiff testified as follows:

Plaintiff is thirty-three years old. He alleges that he is not receiving proper medical care at the Terrebonne Parish Criminal Justice Complex ("TPCJC"). Specifically, he alleges: his blood is not being tested and checked; his body aches; he has fever; he suffers from weakness in his

---

[1] Rec. Doc. 7; see also Rec. Docs. 13 and 14.

knees and shortness of breath; he is alternately hot and cold; he cannot sleep at night; and he hears voices. He alleges that has been diagnosed with a medical condition, but he cannot remember what it is, and, in any event, the diagnosis does not explain his symptoms. When he reported his medical concerns to the TPCJC nursing staff and Dr. Lo, a jail physician, they said there was nothing wrong with him. When plaintiff complained that he was not receiving his medications, he was unable to tell Dr. Lo the names of either the medications or the prescribing physician. Additionally, plaintiff concedes that he does not know why he had been prescribed the medications, but he suspects they were to treat him for both the coronavirus and the harm resulting from his attempted suicide by drinking paint thinner prior to his incarceration.

Due to that suicide attempt, plaintiff had been admitted to the Chabert Medical Center and was placed in the psychiatric unit. He also had surgery at Chabert to remove a copper wire from his finger. He believes that, during the surgery, the surgeon implanted a chip which now causes plaintiff to hear voices.[2] Also, twenty tubes of his DNA were taken at the hospital without his permission. He suspects all of this was done at the request of the Parole Board.

After the <u>Spears</u> hearing, the Court ordered plaintiff's TPCJC medical records, and those records have been filed into this federal record.[3] Those records show the following:

Plaintiff entered TPCJC in August of 2020. At that time, he reported that he suffered from a psychiatric disorder and had been prescribed psychiatric medications, although he admitted that he never had the prescriptions filled.

In October, plaintiff was placed on Bactrim, an antibiotic, and Ibuprofen, a nonsteroidal anti-inflammatory pain reliever, to treat boils on his arms. He also complained that he was hearing voices and needed his medications. He reported that his prescriptions were filled at CVS prior to

---

[2] In a supplemental filing, plaintiff refers to the chip as a "cellular tracking device." Rec. Doc. 13, p. 3.
[3] Rec. Doc. 16.

his incarceration; however, when TPCJC staff contacted both CVS and Walgreens regarding the matter, the pharmacies reported that plaintiff was not in their systems. He was then placed on Risperdal, an antipsychotic medication, and he began receiving that medication at the jail on October 18. On October 21, he was evaluated by Dr. Lo, but no additional treatment was ordered.

In November, plaintiff was seen in the jail's medical department complaining that he had "blacked out" and that his left leg had given out. His blood pressure was checked, and it registered at 124/86. Concerning his leg, the medical records noted that plaintiff was "ambulating well" and his knee was "unremarkable"; nevertheless, he was prescribed ibuprofen for his pain. He later again requested medical attention, complaining that his psychiatric medications were not working; however, because it was noted that he had not been taking his morning medications, he was simply advised to do so. Later in November, he reported to TPCJC staff that he had COVID-19; however, his medical records reflect that he was then tested for the disease, and the result was negative.

In December, plaintiff again requested medical attention, complaining that his body was aching and that he felt feverish. However, a temperature check revealed that his temperature was 98.4°, and so he was instructed to take over-the-counter medications for his complaints.

In January of 2021, plaintiff again requested medical attention, complaining that he had a staph infection. However, the subsequent examination revealed only a boil, and he was therefore again prescribed Bactrim and advised to take over-the-counter medications for pain.

Because plaintiff filed this lawsuit *in forma pauperis*, the Court must screen the case before it can proceed. Specifically, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
>     (i)    is frivolous or malicious;
>     (ii)    fails to state a claim on which relief may be granted; or

3

      (iii)    seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has held:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing the complaint,[4] the undersigned recommends that, for the following reasons, this action be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## I. Claims Against the "Corona Virus Disease"

To the extent that plaintiff is attempting to sue the "Corona Virus Disease" under 42 U.S.C. § 1983, that, obviously, is improper. In pertinent part, that statute provides:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983 (emphasis added). A disease simply is not a "person" and, therefore, cannot properly be named as a defendant in a federal civil rights lawsuit.

Moreover, irrespective of plaintiff's failure to name a proper defendant concerning his allegations that he is not receiving proper medical care for that disease – or for any other ailment – at TPCJC, the Court notes that plaintiff has not stated a plausible claim for the following reasons.[5]

All inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate

---

[4] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[5] Because any claim challenging the adequacy of his medical care at TPCJC fails for the reasons explained herein, it is unnecessary to afford him an opportunity to amend his complaint to identify a proper defendant with respect to such a claim. See, e.g., Martzen v. McLane, 764 F. App'x 402, 403 (5th Cir. 2019) (noting that a plaintiff need not be given an opportunity to amend if he has "already alleged his best case and … any further amendment would not have stated a valid § 1983 claim"); Smith v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 14-2207, 2014 WL 5780696, at *3 (E.D. La. Nov. 4, 2014) ("[T]he Court need not give plaintiff an opportunity to amend his complaint to name a proper defendant, because it is clear that his underlying claim is frivolous and/or fails to state a claim on which relief may be granted ….").

indifference" on the part of penal authorities. See Thompson v. Upshur County, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

"A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). If plaintiff in fact had the coronavirus (also commonly referred to as COVID-19), this Court would have no hesitation in finding that such an infection might rise to the level of a "serious medical need." Cf. Valentine v. Collier, 956 F.3d 797, 801 (5th Cir. 2020 ("There is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious or fatal harm to prison inmates."). However, plaintiff has no evidence that he was so infected, and, moreover, as noted, his medical records show that his test for the disease was negative.

That said, the Court acknowledges that plaintiff may well have other "serious medical needs." For example, he alleges – and his medical records in fact corroborate – that he suffers from a psychiatric disorder. He further alleges, and the Court has no reason to doubt, that he may also be suffering from other physical ailments which have not yet been identified. Nevertheless, even if the Court assumes for the purposes of this decision that plaintiff has one or more "serious medical needs," that is not alone sufficient to warrant relief. Rather, to have an actionable constitutional claim for inadequate medical care, plaintiff must also **plausibly** allege that those needs, whatever they may be, are being met with "deliberate indifference." For the following reasons, he has not done so.

Regarding deliberate indifference requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not

6

suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Plaintiff's medical records effectively rebut any allegation of deliberate indifference in this case. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). Those medical records show that plaintiff's medical requests were not ignored at TPCJC; rather, on each occasion he requested medical attention, he was promptly evaluated and, when the evaluations confirmed a medical problem, he was reminded to take the prescribed medications he had been neglecting to take, given prescription medication, and/or advised to take over-the-counter medications.

The mere fact that plaintiff's symptoms may have persisted despite treatment is not determinative. Federal constitutional protections are not violated simply because an inmate's medical care was unsuccessful or because pain persisted despite that care. Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

It likewise is not determinative that plaintiff's medical care "may not have been the best money could buy." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the critical issue before the Court is not whether plaintiff's medical problems persisted despite treatment or whether his medical care was subpar in some respect; rather, it is only whether his serious medical needs were met with deliberate indifference. They were not.

## II.  Claims Against the "Terrebonne Parish Chabert Medical Center on Grand Caillou Road"

The only other defendant plaintiff listed in the complaint is the "Terrebonne Parish Chabert Medical Center on Grand Caillou Road." The Court does not have sufficient evidence before it at this time to determine whether the hospital would be a proper defendant in a § 1983 lawsuit. Nonetheless, even if it might be a proper defendant in some circumstances, it is not in this case for the following reasons.

A complaint lacks an arguable basis in fact and is therefore factually frivolous when "the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.' As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992) (citations omitted).

Here, plaintiff's claims arising from his stay at the Chabert Medical Center concern allegations that hospital staff stole his DNA and implanted an electronic chip which makes him hear voices. However, he has no evidence that such events occurred, and, despite the apparent sincerity of plaintiff's beliefs, it is more likely that they are an unfortunate product of his admitted psychiatric problems. Complaints by plaintiffs that their DNA has been stolen are commonly found to fall within that category. See, e.g., Bordages v. United States Justice Department, No. 15-2708, 2015 WL 9267086 (W.D. Tenn. Nov. 5, 2015), adopted, 2015 WL 9295994 (W.D. Tenn. Dec. 18, 2015); Thomas v. Drejza, No. 4:11cv348, 2011 WL 4640934 (N.D. Fla. Aug. 31, 2011), adopted, 2011 WL 4640931 (N.D. Fla. Oct. 5, 2011). The same is true of complaints alleging the implantation of electronic chips. See, e.g., Handshy v. Graves, 22 F. App'x 972 (10th Cir. 2001); Bryant v. Doe, Civ. Action No. 9:19-CV-105, 2019 WL 3788264 (E.D. Tex. July 10, 2019), adopted, 2019 WL 3776352 (E.D. Tex. Aug. 10, 2019), appeal dismissed, No. 19-40742, 2020 WL 899888 (5th Cir. Jan. 23, 2020); Lane v. Department of Justice, No. 17-cv-3256, 2018 WL 10691592 (E.D.N.Y. June 28, 2018); Stevens v. Effler, No. 5:08-CV-618, 2009 WL 7110738 (E.D.N.C. May 28, 2009), appeal dismissed, 332 F. App'x 830 (4th Cir. 2009); Hiler v. Taylor, No. 08-cv-333, 2008 WL 2810171 (W.D. Wis. July 18, 2008).

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim upon which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __15th__ day of March, 2021.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**